# EXHIBIT A

# IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

DEBBORAH JEAN CHAPMAN,  )
    Plaintiff,  )
        )
v.  )
        )   No. 191082-2
        )
LINCOLN FINANCIAL ADVISORS  )
CORPORATION d/b/a LINCOLN FINANCIAL )
GROUP and  CLAY ALLEN CAPPS,  )
    Defendants.  )
        )

## COMPLAINT

Debborah Jean Chapman, by and through counsel, states the following for her complaint against the defendants:

1.    Plaintiff is a resident of Knox County, Tennessee, residing at 7234 Winchester Drive, Knoxville, Tennessee 37919.

2.    Defendant Lincoln Financial Advisors Corporation d/b/a Lincoln Financial Group ("LFG") is an Indiana corporation authorized to transact business in the State of Tennessee.  Its registered agent for service of process is The Prentice-Hall Corporation System, Inc., 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

3.    Defendant Clay Allen Capps is a resident of North Carolina with an address of 2713 Greater Druid Hills Blvd., Hendersonville, North Carolina 28791 and may be served with process through the Tennessee Secretary of State.

4.    Venue is proper in Knox County, Tennessee because the annuity contract described herein was purchased by Plaintiff and her deceased husband, William M. Chapman, in Knox County, Tennessee.  Jurisdiction over all defendants is property in Knox County, Tennessee because the annuity contract described herein was purchased in Knox County, all payments made under said contract have heretofore been received in Knox County and the

alleged interest of Defendant Capps emanates from a change of beneficiary form executed in Knox County and delivered to Defendant LFG from Knox County.

5.    Plaintiff and her deceased husband, William M. Chapman, purchased an annuity contract with Defendant LFG (the "Annuity Contract"). A copy of the Annuity Contract is attached hereto as **Exhibit A**. By the express terms of the application, which is a part of Exhibit A, beneficiary designations are **only** applicable when there is no Joint Owner. At the time of the submission of the application, there were two joint owners, Plaintiff and her husband, William Chapman.

6.    Plaintiff's deceased husband was in failing health in 2015 and unable to transact his own business affairs. As a result, Plaintiff became concerned about what would happen to her interest in the Annuity Contract if something happened to her after the death of her husband. Consequently, Plaintiff contacted Defendant LFG to express her concern and to request advice and direction about what to do to solve her concerns. Defendant LFG, through one of its authorized customer service representatives, simply told her to go to the Lincoln Financial website, print a beneficiary designation form, fill it in and send it back to Lincoln Financial.

7.    Plaintiff downloaded the form from the website as instructed, filled it out and sent it to Defendant LFG on or about August 25, 2015. Plaintiff's husband, a joint owner of the Annuity Contract, was still alive at the time this form was submitted. A copy of the form is attached hereto as **Exhibit B**.

8.    Plaintiff's husband died on or about October 23, 2015.

9.    When Plaintiff realized in December, 2015, that her monthly annuity check had not been deposited into her bank account, Plaintiff contacted Defendant LFG and learned that the payments were terminated as a result of her husband's death. She further realized from the

discussion with the LFG representative that she had incorrectly completed the form sent by her to Defendant LFG in that she had designated her brother, Clay Allen Capps, as the beneficiary of the Annuity Contract contrary to the stated intent she expressed to Defendant LFG when she completed the form as directed on or about August 25, 2015.

## COUNT I: BREACH OF CONTRACT

10.     Plaintiff re-alleges and incorporates by reference all of the allegations contained in paragraphs 1-9 of this Complaint as if fully stated herein.

11.     By the express terms of the application made a part of the Annuity Contract, beneficiary designations are applicable "only when there is no Joint Owner" of the Annuity Contract.  There were joint owners of the Annuity Contract referenced herein.  Therefore, Defendant LFG has breached the terms of the Annuity Contract by failing and refusing to pay benefits to the Joint Owner, the Plaintiff herein; Plaintiff has been damaged by Defendant LFG's refusal to follow the terms of its own contract; and Plaintiff is entitled to damages against LFG for the breach of the Annuity Contract by LFG.

## COUNT II.  MUTUAL MISTAKE OF FACT

12.     Plaintiff re-alleges and incorporates by reference all of the allegations contained in paragraphs 1 – 11 of this Complaint as if fully stated herein.

13.     Plaintiff avers that the execution and completion of the form naming her brother as beneficiary prior to her death, was done by mistake and under a mutual mistake with Defendant LFG, such that the designation should be declared null and void and of no effect.

## COUNT III:  REFORMATION

14.     Plaintiff re-alleges and incorporates by reference all of the allegations contained in paragraphs 1 – 13 of this Complaint as if fully stated herein.

15.     Due to the clear mistake in completing the beneficiary designation form, Plaintiff avers that the Court should reform the beneficiary designation to properly reflect her intent that her brother only be the designated beneficiary upon the death of the second owner of the Annuity Contract.

## COUNT IV:  RESULTING OR CONSTRUCTIVE TRUST

16.     Plaintiff re-alleges and incorporates by reference all of the allegations contained in paragraphs 1 – 15 of this Complaint as if fully stated herein.

17.     Plaintiff avers that the Court should declare a resulting or constructive trust in her favor with respect to any of the proceeds of the Annuity Contract to properly reflect her interest as the joint owner of the Annuity Contract.

## COUNT V:  NEGLIGENCE

18.     Plaintiff re-alleges and incorporates by reference all of the allegations of paragraphs 1 – 17 contained in this Complaint as if fully stated herein.

19.     Plaintiff avers that Defendant LFG was negligent in its instructions to the Plaintiff regarding the designation of beneficiary form by failing to properly advise her of what needed to be done to accomplish her stated intent and in the event that she loses her annuity benefits as such result of such negligence, Plaintiff would aver that such loss would be the proximate result of the negligence of the Defendant LFG and said negligence caused damage to the Plaintiff.

20.     Plaintiff requests damages against Defendant LFG equal to the amount of the Annuity Contract.

**WHEREFORE**, Plaintiff prays as follows:

1.      That a summons be issued and served upon the Defendants, together with a copy of this Complaint.

2. That upon a hearing of this cause the beneficiary designation be declared void and of no effect or that same be reformed to reflect the true intent of the Plaintiff.

3. Alternatively, if the beneficiary form is not declared void or reformed, Plaintiff requests damages against the Defendant LFG for its failure to abide by the terms of the Annuity Contract.

4. Alternatively, if the beneficiary form is not declared void or reformed, Plaintiff requests that the Court impose a resulting or constructive trust upon the annuity proceeds in favor of the Plaintiff.

5. That in the event all other causes of action are denied by the Court, Plaintiff requests that she recover damages against Defendant LFG for LFG's negligence equal to the amount of any loss she suffers from the Annuity Contract.

6. That the Plaintiff be granted such other further and general relief as may be warranted by the premises.

RESPECTFULLY SUBMITTED this the 18th day of February, 2016.

HODGES, DOUGHTY & CARSON, PLLC

BY: _Thomas H. Dickenson_

**Thomas H. Dickenson (BPR No. 006844)**
**Donald J. Farinato (BPR No. 019376)**
*Attorneys for the Plaintiff*
PO Box 869
Knoxville TN 37901
(865) 292-2307

## COST BOND

We recognize ourselves as surety for all court costs and taxes in this case in accordance with Tenn. Code Ann. § 20-12-120.

HODGES, DOUGHTY & CARSON, PLLC

BY: _Thomas H. Dickenson_
Thomas H. Dickenson, a Member

## OATH

*STATE OF TENNESSEE*
*COUNTY OF KNOX*

**Debborah Jean Chapman**, after first being duly sworn according to law, makes Oath that:

(a) The facts alleged in the foregoing Complaint are true to the best of her knowledge, information and belief; and,

(b) The claim asserted by the foregoing Complaint is a just claim.

This the 18th day of February, 2016.

_Debbie Chapman_
Debborah Jean Chapman, Plaintiff

*Sworn to and subscribed before me this the 18th day of February, 2016.*

_____
*Notary Public for the State of Tennessee*
*My Commission Expires:* 7/1/2018

## Contract Data

| | | |
|---|---|---|
| Contract Number | 318366 | Sent With Confirmation |
| Annuitant | William M. Chapman | |
| Age at Issue | 62 | |
| Contract Date | 7/27/01 | |
| Initial Purchase Payment | $2000.00 | |
| Planned Periodic Purchase Payments | | $ 0.00 |
| Purchase Payment Frequency | | Unscheduled |
| Maturity | | Not later than Annuitant's 100th Birthday |

Owner: LN-318366-Flex

> William M. Chapman

Joint Owner:

> Debbie J. Chapman

Annuitant's Beneficiary:

> As noted in application

Owner's Beneficiary:

> As noted in application (if applicable)

Your initial Purchase Payment is guaranteed to be credited at an Initial Annual Effective Rate of . . . . . . . . . . . . . . . . . . . . . . .  **6.3** %

This rate is guaranteed for 1 year from the Contract Date.

**Note:** This Contract is valid with proof of initial deposit. Lincoln National reserves the right to amend or correct material errors made at the time of issue.

**EXHIBIT**
11



**Lincoln**
Financial Group
Lincoln Life

**Flexible Premium Deferred Fixed Annuity Application**

Product Name: _Investor's Choice Plus_

MARKET: ☒ Non-Qualified ☐ New IRA (Year ____) ☐ IRA Transfer ☐ IRA Rollover ☐ Other: ____

---

**ANNUITANT INFORMATION** (Please Print)
Full Name: William M Chapman
Sex: ☒M ☐F Birthdate: _____ /39
Soc. Sec. #: _____ 7111 Maturity: **AGE 100**
Primary Beneficiary: Debbie J Chapman

Relationship: _Spouse_
Contingent Beneficiary: ____

Relationship: ____

**OWNER INFORMATION**
Contract Owner: William M. Chapman
Birthdate: _____ /39 Tax ID #: _____ 771
Relationship to Annuitant: owner / self & spouse

**JOINT OWNER INFORMATION**
Joint Owner (if any): Debbie J Chapman
Birthdate: _____ /51 Tax ID #: _____ 0714
Relationship to Owner: self / owner (spouse)
Note: Joint Owners have equal rights under the contract. Upon a non-annuitant Owner's death, Surrender Value proceeds will be paid to any surviving Owner as beneficiary. Only spousal beneficiaries may continue the contract.

---

**MAILING ADDRESS** (All policy correspondence will be sent to this address)
Name: 860 20th St. Apt. 711
Address: Knoxville TN 37916
          William M. Chapman
Phone #: 865-525-4449

**OWNER BENEFICIARY INFORMATION**
Owner's Beneficiary: ____

Relationship: ____
Note: Owner Beneficiary designations are applicable only when there is no Joint Owner.

---

Replacement: Will the proposed contract replace any existing annuity or insurance contract?
☐ Yes ☒ No If "Yes", give details in "Remarks" section.

**Initial Premium Deposit** $ 2000⁰⁰
**Optional Contribution Modes:**
☒ Monthly/PAC ☐ Annual $ 500⁰⁰
☐ Quarterly ☐ Semi-Annual

Remarks: Owner may elect to add more than $500 as his plan allows 60 day look @ Best rate for new dolla

---

Signed at Knoxville | TN | 7/27/01
          City | State | Date

X _[signature]_                    X Debbie J. Chapman
Signature of Owner                 Signature of Joint Owner (If applicable)

---

**AGENT'S REPORT**
Do you have any knowledge or reason to believe that the Proposed Contract will replace any existing annuity or insurance Contracts (including Lincoln National Life Insurance Company Contracts) which have been, or are being reduced in premium amount, placed on paid-up, or surrendered?
☐ Yes ☒ No If "yes", list company, plan, year issued.

X Catherine H Jordan
Agent's Signature
Catherine H. Jordan
Print Agent Name & Number

Home Office Endorsement

---

*Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates*

The Lincoln National Life Insurance Company
Form LN-1799 (12/90)    Administrative Office: 1801 South Meyers Road • Oakbrook Terrace, Illinois 60181-5214 • (630) 916-0095    IIB3.0

# POLICY SCHEDULE CONTINUED

| Surrender/Withdrawal During Contract Year | Surrender Charge Percentage Applicable to Surrenders or Withdrawals |
|---|---|
| 1 | 8.00% |
| 2 | 7.00% |
| 3 | 7.00% |
| 4 | 5.00% |
| 5 | 4.00% |
| 6 | 3.00% |

Guaranteed Interest Rates

After the initial interest rate guarantee expires, interest will be credited at annual effective rates greater than or equal to the Guaranteed Interest Rates shown below:

3.0% year 2 and thereafter

Page 3b.


**Lincoln**
Financial Group

The Lincoln National Life Insurance Company
Executive Office: 1300 South Clinton Street • Fort Wayne, Indiana 46801
Administrative Office: 1801 South Meyers Road • Oakbrook Terrace, Illinois 60181-5214 • (630) 916-0095

## HOSPITAL/NURSING HOME ENDORSEMENT
### MADE A PART OF THE CONTRACT TO WHICH IT IS ATTACHED

The Lincoln National Life Insurance Company will waive any Surrender Charges as provided under "Withdrawal Option" or "Surrender Option" if:

1. The Withdrawal Option or Surrender Option is exercised before proceeds are received under an Annuity Payment Option;

2. The Annuitant or the spouse of the Annuitant becomes confined to a state licensed or legally operated hospital or inpatient nursing facility for at least 30 consecutive days. Spouse shall be defined as the husband or wife of the Annuitant at the time of claim according to the state law where they reside and shall not mean former spouse;

3. The withdrawal or surrender is made while the Annuitant or the spouse of the Annuitant is confined or within 90 days after discharge from such facility; and

4. Confinement must have begun after the effective date of the Contract.

Signed for The Lincoln National Life Insurance Company at Fort Wayne, Indiana.

Secretary

President

*Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates*

LN-3030AA(2/94)

## NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER THE TENNESSEE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association.

The purpose of this Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force.

The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

### DISCLAIMER

The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee. You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.

**The Tennessee Life and Health Insurance Guaranty Association**
P.O. Box 25th Floor
511 Union Street
Nashville, Tennessee 37219

**Tennessee Department of Commerce and Insurance**
500 James Robertson Parkway
Nashville, Tennessee 37243

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. On the back of this page is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Guaranty Association.

X-0002TN

## COVERAGE

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in Tennessee and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by an insurer authorized to conduct business in Tennessee.

The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Association if:

1) they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

2) the insurer was not authorized to do business in this state;

3) their policy was issued by a nonprofit hospital or medical service organization (the "Blues"), an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The Association also does not provide coverage for:

1) any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

2) any policy of reinsurance (unless an assumption certificate was issued);

3) interest rate yields that exceed an average rate;

4) dividends;

5) credits given in connection with the administration of a policy by a group contractholder;

6) employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

7) unallocated annuity contracts (which give rights to group contractholders, not individuals), unless qualified under Section 403(b), unallocated annuities issued to employee benefit plans protected by the federal Pension Benefit Guaranty Corporation are not covered.

## LIMITS ON AMOUNT OF COVERAGE

The Act also limits the amount the Association is obligated to pay out. The Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Association will not pay more than a maximum of $300,000 — no matter how many policies and contracts there were with the same company, even if they provided different coverages. Within this overall $300,000 limit, the Association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits — again no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

X-0002TN

# ARTICLE 1
## Definitions

"Account Value" means the Purchase Payment(s) plus credited interest, less any prior withdrawal and applicable state premium tax.

"Administrative Office" is located at 1801 South Meyers Road, Oakbrook Terrace, IL 60181-5214.

"Annuitant" is the person named in the Schedule Page to whom the Annuity Payments will be paid, subject to the provisions of the Contract.

"Annuity Start Date" is the date on which Annuity Payments begin under an Annuity Payment Option as described in Article 3.

"Beneficiary" unless changed by the Owner, is the person(s) named in the application to whom proceeds are payable upon the death of the Annuitant as described in Article 3.

"Joint Owners" if named in the application, shall be treated as having equal undivided interests in the Contract. Either Owner, independent of the other, may exercise all ownership rights specified in this Contract. However, the right to change the Owner, Surrender or Assign this Contract must be exercised jointly by both Owners.

"Owner" is the person, persons or entity named in the application who may exercise all rights granted under this Contract while the Annuitant is living. If no Owner is named in the application the Annuitant is the Owner.

"Owner's Beneficiary" unless changed by the Owner, is the person named in the application who may be entitled to receive the Surrender Value of the Contract or to continue the Contract upon the death of a non-annuitant Owner as described in Article 3.

"Surrender Value" means the Account Value less a Surrender Charge.

# ARTICLE 2
## Purchase Payments

### 2.01 Where Payable

All Purchase Payments must be made to Lincoln National at its Administrative Office.

### 2.02 Amount And Frequency

Purchase Payments are made in an amount and at the frequency shown on the Policy Schedule. Purchase Payments may be paid once each year, twice each year, four times each year, once each month, twice each month, or once each two weeks. The Owner may change the frequency or amount of Purchase Payments subject to Lincoln National's rules in effect at the time of the change. The change is made by filing a written request to Lincoln National at its Administrative Office.

The amount of Purchase Payments made in the first year may be increased in years after the first up to twice that amount. The amount may be decreased but not below Lincoln National's Purchase Payment minimum in effect at the time of the decrease. An increase in Purchase Payments in excess of those described in the first sentence will be accepted only with the consent of Lincoln National.

Lincoln National reserves the right to refuse initial payments of less than $2,000, or subsequent payments of less than $50 each. Payments in excess of $100,000.00 in any Contract Year may be made only with prior written approval. No Purchase Payments will be accepted after the Annuitant has attained age 85.

### 2.03 Crediting Of Interest

Interest shall be credited daily on all Purchase Payments under this Contract and added to the Account Value of the Annuitant.

Prior to the time the Annuitant elects to receive Annuity Payments or the death of the Annuitant, whichever occurs first, the Company guarantees that it will credit interest at an annual effective rate not less than the Guaranteed Interest Rates shown on the Policy Schedule.

Lincoln National may credit interest at rates in excess of the Guaranteed Interest Rates at any time.

### 2.04 Automatic Nonforfeiture Option

In the event that Purchase Payments are stopped, this Contract will continue as a paid-up Contract until the earlier of the Maturity Date, surrender of the Contract, or death of the Annuitant. Purchase Payments may be resumed at any time prior to maturity, surrender, or death of the Annuitant. If no Purchase Payments are received under this Contract for a period of two full

Case 3:16-cv-00130-TAV-HBG   Document 1-1   Filed 03/18/16   Page 14 of 37   PageID #: 21

Contract Years and if the Account Value of the Contract will not provide a benefit of at least $20 per month at maturity, Lincoln National has the right to redeem the Contract. The amount paid to the Owner upon redemption will be equal to the Account Value at that time. The Account Value is the Purchase Payment(s) plus credited interest, less any prior withdrawals and any applicable state premium tax.

Any paid-up annuity, cash surrender, or death benefit that may be available under this Contract will not be less than the minimum benefit required by any statute of the state in which the Contract is delivered. Any excess interest which may be credited to this Contract would increase the minimum benefit and any withdrawal or partial surrender under this Contract would reduce the minimum benefit.

# ARTICLE 3
# Benefits

### 3.01 Annuity Payments

An election to receive proceeds under an Annuity Payment Option must be made by the Maturity Date.

If an Annuity Payment Option is not chosen prior to the Maturity Date, payments will commence on the Maturity Date under the Annuity Payment Option providing a Life Annuity with Annuity Payments guaranteed for 120 months.

However, upon written request by the Owner and any Beneficiary who cannot be changed, the Maturity Date may be deferred. The Maturity Date cannot be deferred past the Contract Anniversary on which the attained age of the Annuitant is 100.

### 3.02 Choice Of Annuity Payment Option

a. By Owner — While the Annuitant is alive, the Owner my choose any Annuity Payment Option or change any choice, if that right has been reserved, but only before the Maturity Date. The election must be made not later than thirty days prior to the Maturity Date.

b. By Beneficiary — At the time proceeds are payable, a Beneficiary may choose or change any Annuity Payment Option if proceeds are available to the Beneficiary in one sum.

A choice or change must be in writing to Lincoln National's Administrative Office.

### 3.03 Annuity Payment Options

a. Life Annuity, Guaranteed Period — Payments will be made for:
   - Life with no certain period;
   - Life and a 120 month certain period; or
   - Life and a 240 month certain period.

b. Life Annuity, Guaranteed Return — The sum of the payments made and any amount to be paid at the death of the person on whom the payments are based will not be less than the proceeds applied.

c. Joint Life Annuity, Guaranteed Period — Payments will be made for:
   - Life with no certain period;
   - Life and a 120 month certain period; or
   - Life and a 240 month certain period.

   Payments will be made during the joint life of the Annuitant and a Joint Annuitant of the Annuitant's choice. Payments continue for the life of the survivor at the death of the Annuitant or Joint Annuitant.

d. Income for Specified Period — Payments will be made for the period elected but not less than 60 months nor more than 360 months.

e. Other options may be available as agreed upon by Lincoln National.

The amount of the Annuity Payment will depend on the adjusted age of the Annuitant at the time the first payment is due. The adjusted age of the Annuitant is determined from the Age Adjustment table found at the end of the option tables. The value used to effect benefit payments for an Annuitant will be calculated as of the thirtieth day prior to the date benefit payments start.

The payment amounts shown in the option tables are the guaranteed monthly payments for each option. The tables show the dollar amount of the guaranteed monthly payments which can be purchased with each $1,000 of Account Value, after deduction of any applicable premium tax. Amounts shown use the 1983 "a" Individual Annuity Mortality Table, modified, with an interest rate of 3% per year and a 2% expense load. At the time of annuitization, the annuity payments will not be less than the payment amount found in the option tables.

### 3.04 Proof Of Age

Payment will be subject to proof of age that Lincoln National will accept.

### 3.05 Amount Requirements For Annuity Payment Options And Payments

If the Annuity Payment Option chosen results in payments of less than $50, the frequency will be changed so that payments will be at least $50.

### 3.06 Evidence Of Survival

Lincoln National has the right to ask for proof that the person on whom the payment is based is alive when each payment is due.

### 3.07 Change In Annuity Payment

Changes in Annuity Payments may not be made after the Annuity Start Date.

### 3.08 Assignment

This Contract may not be assigned as collateral or security for a loan. Otherwise, the Owner may assign this Contract prior to the Annuity Start Date, subject to the rights of any Irrevocable Beneficiary. If Joint Owners are named in the application, the right of assignment must be exercised jointly by both Owners. No Beneficiary may assign benefits under this Contract until they are due. No assignment will be binding against Lincoln National unless it is signed by the Owner and filed with Lincoln National's Administrative Office. Lincoln National is not responsible for the validity of any assignment.

### 3.09 Surrender Option

The Owner may surrender this Contract for its Surrender Value. If Joint Owners are named in the application, the right to surrender must be exercised jointly by both Owners. On surrender, this Contract terminates. Surrender will be effective on the date or next following the date Lincoln National has received a written request at its Administrative Office. The Surrender Value will be the Account Value less a Surrender Charge. Lincoln National guarantees that the Surrender Value will not be less than the sum of all Purchase Payments less any prior withdrawals.

The Surrender Charge is determined by multiplying the Surrender Charge percentage by the Account Value. If no withdrawals were made earlier in the Contract Year in which Surrender occurs, 10% of the Surrender Charge will be waived. The Surrender Charge Percentage varies by Contract Year. The applicable Surrender Charge Percentages are shown on the Policy Schedule.

A Contract Year is the period from the Contract effective date (month and day) to the anniversary of the Contract effective date in the following year.

Within seven days after receipt of the surrender request, any payment may be made by check and mailed from Lincoln National's Administrative Office, or at the Owner's request, wire transferred to an account in a financial institution. However, Lincoln National reserves the right to defer such payment for six months after receipt of the surrender request. The Surrender Option is not available after Annuity Payments have begun.

Any Account Value payable as a result of annuitization or death will not be subject to the charges as outlined herein.

### 3.10 Withdrawal Option

The Owner may withdraw a part of the Account Value of this Contract, subject to the charges outlined under Surrender Option. The first partial withdrawal in any Contract Year will be free of withdrawal charges up to 10% of the Account Value. Withdrawal will be effective on the date or next following the date Lincoln National receives a written request at its Administrative Office. The minimum withdrawal is $100. If any withdrawal reduces the Account Value to less than $300, Lincoln National has the right to redeem the Contract. The remaining value will be subject to the charges as provided under Surrender Option. Within seven days after receipt of the withdrawal request, any payment may be made by check and mailed from Lincoln National's Administrative Office, or at the Owner's request, wire transferred to an account in a financial institution. However, Lincoln National reserves the right to defer such payment for six months after receipt of the withdrawal request. The Withdrawal Option is not available after Annuity Payments have begun.

### 3.11 Death Of Annuitant

On receipt of due proof of death of the Annuitant before the Annuity Start Date, Lincoln National will pay to the Beneficiary the Account Value as of the day on which written notice of death is received by Lincoln National. Due proof of death shall be either the certificate of death, a copy of the certified statement of death from the attending physician, a copy of a certified decree of a court of competent jurisdiction as to the finding of death, or any other proof satisfactory to Lincoln National.

On receipt of due proof of death of the Annuitant after the Annuity Start Date, if any Annuity Payments remain under the Option they will be paid to the Beneficiary as provided by the Option.

Unless otherwise provided in the Beneficiary designation, if no Beneficiary survives the Annuitant, the proceeds will be paid in one sum to the Owner, if living; otherwise to the Owner's estate.

If the Annuity Start Date has not begun and the Beneficiary designated at the time of the Annuitant's death is the Annuitant's surviving spouse, this Contract may be continued in the name of the spouse as the Annuitant.

For a Beneficiary other than a spouse, if the Annuitant dies before the Annuity Start Date, the amounts must be distributed to the designated Beneficiary within five years of the death of the Annuitant.

For a Beneficiary other than a spouse, if the Annuitant dies after the Annuity Start Date, the remaining portion of the Annuitant's interest must either be distributed at least as rapidly as under the method of distribution being used as of the date of the Annuitant's death, or distributed over the life of the Beneficiary or a period not extending beyond the life expectancy of the Beneficiary. The distribution of these amounts must begin not later than one year after the annuitant's death.

### 3.12 Death Of Owner

If the Owner is a natural person and dies before the Annuity Start Date, upon receipt of due proof of death, Lincoln National will pay the Surrender Value of the Contract that is available on the day Lincoln National receives written notice of death. Due proof of death shall be either the certificate of death, a copy of the certified statement of death from the attending physician, a copy of the certified decree of a court of competent jurisdiction as to the finding of death, or any other proof satisfactory to Lincoln National.

On receipt of due proof of the death of an Owner or Joint Owner who is not also named as the Annuitant, the available Surrender Value will be paid to any surviving Joint Owner as beneficiary. If no Joint Owner has been named then the Surrender Value shall be paid to the Owner's Beneficiary. If no Joint Owner or Owner's Beneficiary has been named, then the Surrender Value shall be paid to the Annuitant.

If the decedent Owner or Joint Owner is also named as the Annuitant, then the death shall be treated as a death of the Annuitant and shall be subject to the provisions of this Contract regarding Death of Annuitant.

If the recipient of the Surrender Value is the Owner's surviving spouse, such surviving spouse shall be

deemed as having held the Contract with rights of survivorship and the Contract may be continued in the name of the spouse as Owner.

For a recipient other than a spouse, any distribution must be paid within 5 years of the death of the Owner unless the recipient begins receiving, within one year of the Owner's death, the distribution in the form of a life annuity or an annuity for a period certain not exceeding the recipient's life expectancy.

# ARTICLE 4
## Beneficiary

### 4.01 Designation

The Beneficiary named in the application for this Contract will receive the proceeds on the death of the Annuitant unless the Beneficiary has been changed by the Owner.

### 4.02 Change

The Owner may change any Beneficiary during the life of the Annuitant unless otherwise provided in the previous designation. A change of Beneficiary will revoke any previous designation.

A change may be made by filing a written request to Lincoln National at its Administrative Office. The change will become effective upon receipt of the written request by Lincoln National at its Administrative Office.

The Owner may also change any named Owner's Beneficiary unless otherwise provided in the previous designation. A change of the Owner's Beneficiary will revoke any previous designation.

### 4.03 Death Of Beneficiary

Unless otherwise provided in the Beneficiary designation, if any Beneficiary dies before the Annuitant, that Beneficiary's interest will pass to any other Beneficiaries according to their respective interests.

If the Beneficiary dies while receiving any remaining Annuity Payments due after the death of the Annuitant, the value of the remainder of such Annuity Payments will be paid in one sum to the Beneficiary's estate.

# ARTICLE 5
## General Provisions

### 5.01 The Contract

This Contract, the application, and any riders attached to this Contract make up the whole Contract. Only the President, a Vice-President, the Secretary or an Assistant Secretary of Lincoln National has the power, on behalf of Lincoln National, to change, modify, or waive any provisions of this Contract. Any changes, modifications, or waivers must be in writing.

### 5.02 Incontestability

This Contract will not be contested.

### 5.03 Misstatement Of Age

If the age of the Annuitant has been misstated, the benefits available under this Contract will be those which the Purchase Payments would have purchased for the correct age. Any underpayments already made by Lincoln National shall be made up immediately in one sum and any overpayments already made up by Lincoln National shall be charged against the Annuity Payments falling due after adjustment.

### 5.04 Nonparticipating

This Contract is nonparticipating and will not share in the surplus earnings of Lincoln National.

### 5.05 Annual Reports

At least once each Contract Year, it is hereby agreed that Lincoln National shall mail to the Owner of this Contract a report which shall include a statement of the value of such Contract. The report shall be mailed to the last address known to Lincoln National. The information in the report shall be as of a date not more than two months previous to the date of mailing the report.

# ARTICLE 6
## Guaranteed Values

### 6.01 Accumulated Values

The Table of Guaranteed Accumulated Values illustrates the guaranteed accumulated values (where no partial withdrawals have been made) for a single premium of $1000.00 and for a series of annual premiums of $1000.00 each. Extensions of these tables are available from Lincoln National Administrative Office upon request.

The values are not less than those required by law in the state in which this policy is delivered. Actual values may be higher if excess interest is declared by Lincoln National.

Lincoln National will report the actual amount of accumulated values to the Owner annually. Notice will be mailed to the last known address of the Owner.

## ANNUITY PURCHASE RATES
(Values for Ages not shown will be furnished upon request.)

### GUARANTEED DOLLAR AMOUNT OF MONTHLY PAYMENT WHICH IS PURCHASED WITH EACH $1,000 APPLIED

#### DESIGNATED PERIOD ANNUITIES

| Years of Payments | Amount of Monthly Payment | Years of Payments | Amount of Monthly Payment | Years of Payments | Amount of Monthly Payment |
|---|---|---|---|---|---|
| 5 | 17.55 | 14 | 7.11 | 23 | 4.89 |
| 6 | 14.84 | 15 | 6.73 | 24 | 4.75 |
| 7 | 12.90 | 16 | 6.40 | 25 | 4.62 |
| 8 | 11.45 | 17 | 6.10 | 26 | 4.50 |
| 9 | 10.32 | 18 | 5.84 | 27 | 4.39 |
| 10 | 9.42 | 19 | 5.61 | 28 | 4.28 |
| 11 | 8.69 | 20 | 5.40 | 29 | 4.19 |
| 12 | 8.07 | 21 | 5.21 | 30 | 4.10 |
| 13 | 7.56 | 22 | 5.04 | | |

#### SINGLE LIFE ANNUITIES

| Adjusted Age Nearest Birthday | No Period Certain | 120 Months Certain | 240 Months Certain | Cash Refund |
|---|---|---|---|---|
| 60 | $4.42 | $4.38 | $4.22 | $4.18 |
| 61 | 4.52 | 4.47 | 4.29 | 4.26 |
| 62 | 4.62 | 4.56 | 4.36 | 4.34 |
| 63 | 4.73 | 4.66 | 4.43 | 4.42 |
| 64 | 4.85 | 4.77 | 4.50 | 4.51 |
| 65 | 4.97 | 4.89 | 4.57 | 4.60 |
| 66 | 5.11 | 5.01 | 4.64 | 4.69 |
| 67 | 5.25 | 5.13 | 4.71 | 4.79 |
| 68 | 5.41 | 5.27 | 4.78 | 4.90 |
| 69 | 5.57 | 5.41 | 4.85 | 5.01 |
| 70 | 5.75 | 5.56 | 4.91 | 5.13 |
| 71 | 5.95 | 5.71 | 4.98 | 5.25 |
| 72 | 6.16 | 5.88 | 5.04 | 5.38 |
| 73 | 6.38 | 6.05 | 5.09 | 5.52 |
| 74 | 6.63 | 6.23 | 5.14 | 5.66 |
| 75 | 6.90 | 6.42 | 5.19 | 5.81 |
| 76 | 7.18 | 6.61 | 5.23 | 5.97 |
| 77 | 7.49 | 6.80 | 5.26 | 6.14 |
| 78 | 7.82 | 7.00 | 5.29 | 6.32 |
| 79 | 8.19 | 7.20 | 5.32 | 6.50 |
| 80 | 8.58 | 7.40 | 5.34 | 6.70 |
| 81 | 9.00 | 7.60 | 5.36 | 6.90 |
| 82 | 9.47 | 7.79 | 5.37 | 7.12 |
| 83 | 9.97 | 7.98 | 5.38 | 7.34 |
| 84 | 10.51 | 8.16 | 5.39 | 7.58 |
| 85 | 11.11 | 8.33 | 5.39 | 7.83 |

# JOINT AND SURVIVOR ANNUITIES

| JOINT AND FULL TO SURVIVOR | | | | JOINT AND TWO-THIRDS TO SURVIVOR | | |
| Certain Period | | | | Certain Period | | |
| None | 120 Months | 240 Months | Adjusted Joint Age | None | 120 Months | 240 Months |
|---|---|---|---|---|---|---|
| $4.01 | $4.01 | $3.98 | 60 | $4.43 | $4.38 | $4.22 |
| 4.09 | 4.08 | 4.05 | 61 | 4.52 | 4.47 | 4.29 |
| 4.17 | 4.16 | 4.12 | 62 | 4.63 | 4.57 | 4.36 |
| 4.25 | 4.25 | 4.19 | 63 | 4.74 | 4.67 | 4.43 |
| 4.34 | 4.34 | 4.26 | 64 | 4.85 | 4.78 | 4.50 |
| 4.44 | 4.43 | 4.34 | 65 | 4.98 | 4.89 | 4.57 |
| 4.54 | 4.54 | 4.42 | 66 | 5.11 | 5.01 | 4.64 |
| 4.66 | 4.64 | 4.50 | 67 | 5.26 | 5.13 | 4.71 |
| 4.77 | 4.76 | 4.58 | 68 | 5.41 | 5.27 | 4.78 |
| 4.90 | 4.88 | 4.66 | 69 | 5.57 | 5.41 | 4.85 |
| 5.04 | 5.01 | 4.74 | 70 | 5.75 | 5.55 | 4.91 |
| 5.18 | 5.15 | 4.82 | 71 | 5.94 | 5.70 | 4.98 |
| 5.34 | 5.30 | 4.89 | 72 | 6.14 | 5.86 | 5.03 |
| 5.51 | 5.45 | 4.96 | 73 | 6.35 | 6.03 | 5.09 |
| 5.69 | 5.62 | 5.03 | 74 | 6.59 | 6.20 | 5.14 |
| 5.89 | 5.79 | 5.09 | 75 | 6.84 | 6.38 | 5.18 |
| 6.09 | 5.97 | 5.15 | 76 | 7.11 | 6.56 | 5.22 |
| 6.32 | 6.17 | 5.20 | 77 | 7.39 | 6.75 | 5.26 |
| 6.56 | 6.36 | 5.24 | 78 | 7.71 | 6.95 | 5.29 |
| 6.82 | 6.57 | 5.28 | 79 | 8.04 | 7.14 | 5.32 |
| 7.10 | 6.78 | 5.31 | 80 | 8.40 | 7.34 | 5.34 |
| 7.41 | 7.00 | 5.34 | 81 | 8.79 | 7.53 | 5.36 |
| 7.73 | 7.21 | 5.36 | 82 | 9.21 | 7.72 | 5.37 |
| 8.09 | 7.43 | 5.37 | 83 | 9.67 | 7.91 | 5.38 |
| 8.47 | 7.64 | 5.38 | 84 | 10.16 | 8.09 | 5.39 |
| 8.88 | 7.85 | 5.39 | 85 | 10.68 | 8.26 | 5.39 |

# AGE ADJUSTMENT

| Year of Birth | Adjustment to Age | Year of Birth | Adjustment to Age |
|---|---|---|---|
| Before 1920 | +2 | 1960 – 1969 | -3 |
| 1920 – 1929 | +1 | 1970 – 1979 | -4 |
| 1930 – 1939 | 0 | 1980 – 1989 | -5 |
| 1940 – 1949 | -1 | 1990 – 1999 | -6 |
| 1950 – 1959 | -2 | ETC. | ETC. |

## GUARANTEED ACCUMULATED VALUES OF A SINGLE $1,000 PREMIUM PAID ON THE ISSUE DATE*

| End of Contract Year | Account* Value | % Surrender Charge | Surrender Charge Value | Surrender Value |
|---|---|---|---|---|
| 1 | $1,030.00 | 8.00% | $30.00 | $1,000.00 |
| 2 | 1,060.90 | 7.00% | 60.90 | 1,000.00 |
| 3 | 1,092.73 | 7.00% | 68.84 | 1,023.89 |
| 4 | 1,125.51 | 5.00% | 50.65 | 1,074.86 |
| 5 | 1,159.28 | 4.00% | 41.73 | 1,117.55 |
| 6 | 1,194.06 | 3.00% | 32.24 | 1,161.82 |
| 7 | 1,229.88 | 0.00% | 0.00 | 1,229.88 |
| 8 | 1,266.78 | 0.00% | 0.00 | 1,266.78 |
| 9 | 1,304.78 | 0.00% | 0.00 | 1,304.78 |
| 10 | 1,343.92 | 0.00% | 0.00 | 1,343.92 |
| 11 | 1,384.24 | 0.00% | 0.00 | 1,384.24 |
| 12 | 1,425.77 | 0.00% | 0.00 | 1,425.77 |
| 13 | 1,468.54 | 0.00% | 0.00 | 1,468.54 |
| 14 | 1,512.60 | 0.00% | 0.00 | 1,512.60 |
| 15 | 1,557.98 | 0.00% | 0.00 | 1,557.98 |
| 16 | 1,604.72 | 0.00% | 0.00 | 1,604.72 |
| 17 | 1,652.86 | 0.00% | 0.00 | 1,652.86 |
| 18 | 1,702.45 | 0.00% | 0.00 | 1,702.45 |
| 19 | 1,753.52 | 0.00% | 0.00 | 1,753.52 |
| 20 | 1,806.13 | 0.00% | 0.00 | 1,806.13 |

## GUARANTEED ACCUMULATED VALUES OF A SERIES OF $1,000 PREMIUMS PAID AT THE START OF EACH CONTRACT YEAR

| End of Contract Year | Account* Value | % Surrender Charge | Surrender Charge Value | Surrender Value |
|---|---|---|---|---|
| 1 | $ 1,030.00 | 8.00% | $ 30.00 | $ 1,000.00 |
| 2 | 2,090.90 | 7.00% | 90.90 | 2,000.00 |
| 3 | 3,183.63 | 7.00% | 183.63 | 3,000.00 |
| 4 | 4,309.14 | 5.00% | 193.91 | 4,115.23 |
| 5 | 5,468.41 | 4.00% | 196.86 | 5,271.55 |
| 6 | 6,662.46 | 3.00% | 179.89 | 6,482.57 |
| 7 | 7,892.33 | 0.00% | 0.00 | 7,892.33 |
| 8 | 9,159.10 | 0.00% | 0.00 | 9,159.10 |
| 9 | 10,463.87 | 0.00% | 0.00 | 10,463.87 |
| 10 | 11,807.79 | 0.00% | 0.00 | 11,807.79 |
| 11 | 13,192.02 | 0.00% | 0.00 | 13,192.02 |
| 12 | 14,617.78 | 0.00% | 0.00 | 14,617.78 |
| 13 | 16,086.31 | 0.00% | 0.00 | 16,086.31 |
| 14 | 17,598.90 | 0.00% | 0.00 | 17,598.90 |
| 15 | 19,156.87 | 0.00% | 0.00 | 19,156.87 |
| 16 | 20,761.58 | 0.00% | 0.00 | 20,761.58 |
| 17 | 22,414.43 | 0.00% | 0.00 | 22,414.43 |
| 18 | 24,116.86 | 0.00% | 0.00 | 24,116.86 |
| 19 | 25,870.37 | 0.00% | 0.00 | 25,870.37 |
| 20 | 27,676.48 | 0.00% | 0.00 | 27,676.48 |

* The values shown assume that premiums are paid annually. Premium payments made more frequently than annually will result in values lower than those shown.


Lincoln
Financial Group®

**Change of Beneficiary**

The Lincoln National Life Insurance Company
Lincoln Life & Annuity Company of New York
Servicing Office - PO Box 2348
Fort Wayne IN 46801-2348
Fax Number 260-455-6310
www.LincolnFinancial.com
Overnight Address: Lincoln Financial Group
Policy Change – IA
1300 S Clinton St
Fort Wayne IN 46802-3508

For purposes of Joint Owners, Living Benefit Riders and beneficiaries the term "Spouse" means a spouse as defined under Federal law. The term "spouse" does not include a domestic partner, civil union partner, or other status that is not recognized as a spouse under Federal law. Lincoln will treat couples claiming any other status not recognized as a marriage under Federal law as unmarried individuals for Federal income tax purposes.

## Contract* Information

Contract Number: **3183366**

Issued by: The Lincoln National Life Insurance Company or Lincoln Life & Annuity Company of New York (as set forth in your contract).

Contract Owner's Name: **DEBBORAH (& WILLIAM) CHAPMAN**

Social Security Number (Last 4 digits) XXX-XX- **0714**          Date of Birth: ____ /**51**

Telephone Number: Daytime: **865-242-8115**          Evening: **SAME**

## Beneficiary Designation

*For a trust as beneficiary skip to page 2 and complete the trust section.*

In accordance with the provisions of the contract, I/we revoke all former beneficiary designations and elect to change the beneficiary as indicated below. Additional beneficiaries may be designated on a separate sheet and must include a signature on each page.

Primary (you must have at least one primary beneficiary)

Name: **CLAY ALLEN CAPPS**          Relationship: **BROTHER**          Percentage: **100%**

Social Security/ Tax ID Number ____ **1875**          Date of Birth: ____ /**56**   ☒ Male   ☐ Female

Address: **2713 GREATER DRUID HILLS BOULEVARD**

City: **HENDERSONVILLE**          State: **NC**          ZIP Code: **28791**

Email Address: **lighthouse51@bellsouth.net**          Telephone Number: **828-693-1244**

☐ Primary          ☐ Contingent

Name: _____          Relationship: _____          Percentage: _____

Social Security/ Tax ID Number: _____          Date of Birth: _____   ☐ Male   ☐ Female

Address: _____

City: _____          State: _____          ZIP Code: _____

Email Address: _____          Telephone Number: _____

☐ Primary          ☐ Contingent

Name: _____          Relationship: _____          Percentage: _____

Social Security/ Tax ID Number: _____          Date of Birth: _____   ☐ Male   ☐ Female

Address: _____

City: _____          State: _____          ZIP Code: _____

Email Address: _____          Telephone Number: _____

*"Contract" may be referred to as "policy" or "certificate."

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
28493

Page 1 of 2


EXHIBIT
B

☐ Primary ☐ Contingent

Name: _____ Relationship: _____ Percentage: _____

Social Security/ Tax ID Number: _____ Date of Birth: _____ ☐ Male ☐ Female

Address: _____

City: _____ State: _____ ZIP Code: _____

Email Address: _____ Telephone Number: _____

☐ Primary ☐ Contingent

Name: _____ Relationship: _____ Percentage: _____

Social Security/ Tax ID Number: _____ Date of Birth: _____ ☐ Male ☐ Female

Address: _____

City: _____ State: _____ ZIP Code: _____

Email Address: _____ Telephone Number: _____

**If designating a trust as beneficiary, complete the following:**

☐ Primary ☐ Contingent

Name: _____ Social Security/Tax ID Number: _____ Percentage: _____

Trustee's Name: _____ Date of Trust: _____

Address: _____

City: _____ State: _____ ZIP Code: _____

Telephone Number: _____

## Signatures

*Debborah Jean Chapman*                    8/25/2015
Contract Owner/Trustee's Signature                 Date

*(William can no longer sign legal documents.)*
Joint Owner's Signature (if applicable)              Date

Case 3:16-cv-00130-TAV-HBG   Document 1-1   Filed 03/18/16   Page 23 of 37   PageID #: 30

## IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

FILED

2016 FEB 18 AM 11:36

HOWARD G. HOGAN

No. 47-191082-8

| | |
|---|---|
| DEBBORAH JEAN CHAPMAN | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| LINCOLN FINANCIAL ADVISORS | ) |
| CORPORATION d/b/a LINCOLN | ) |
| FINANCIAL GROUP and | ) |
| CLAY ALLEN CAPPS, | ) |
| | ) |
| Defendant. | ) |

A. D. A. DA
FOR ASSISTANCE CALL
865 / 215-2952
TTY: 865 / 215-2497

### SUMMONS

To the above-named Defendant(s): **LINCOLN FINANCIAL ADVISORS CORPORATION d/b/a LINCOLN FINANCIAL GROUP**

You are hereby summoned and required to serve upon **Thomas H. Dickenson**, attorney for Plaintiff, whose address is **617 W. Main Street, Post Office Box 869, Knoxville, Tennessee 37901-0869**, a true copy of the defense to the Complaint herewith served upon you within 30 days after service of this Summons and Complaint upon you, exclusive of the day of service. You will file the original pleading with the Court. If you fail to do so, judgment by default can be taken against you for the relief demanded in the Complaint.

Issued and tested this ____18th____ day of February, 2016.

_____
Clerk

_____
Deputy Clerk

### NOTICE

To the Defendant(s):

Tennessee law provides a **ten thousand dollar ($10,000.00)** personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## SERVICE INFORMATION

To the Process Server:   **DEFENDANT**, **LINCOLN FINANCIAL ADVISORS CORPORATION**
**d/b/a LINCOLN FINANCIAL GROUP**, can be served through its registered agent **The Prentice-Hall**
**Corporation System, Inc., 2908 Poston Avenue, Nashville, Tennessee 37203-1312.**

### RETURN

I received this Summons on the ___FEB 2 2 2016___ day of _____, 2016.

I hereby certify and return that on the ___FEB 2 3 2016___ day of _____, 2016:

[  ]   I served this Summons and a Complaint on Defendant _____ Served
in the following manner:_____ Corporation Service Company
_____

[  ]   I failed to serve this Summons within 30 days after its issuance because:_____
_____

Cynthia Walker
_____
Process server
8:45 9:00 Am



# STATE OF TENNESSEE
## Tre Hargett, Secretary of State
### Division of Business Services
William R. Snodgrass Tower
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. HOWARD G. HOGAN
400 W MAIN ST RM 125
KNOXVILLE, TN 37902-2423

03/04/2016
Case #: **191082-2**
Certified #: **70150640000396064092**

RE: **DEBBORAH JEAN CHAPMAN**

VS: **LINCOLN FINANCIAL ADVISORS CORPORATION DBA LINCOLN FINANCIAL GROUP AND CLAY ALLEN CAPPS**

Dear Clerk,

Enclosed are the following papers in the above styled case:

☑ Original Summons

☑ Affidavit and Endorsement

☑ Registered or Certified Return Receipt signed by:

   SEE ATTACHED CARD

☐ Registered or Certified letter returned refused

☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures:  Original Documents



**STATE OF TENNESSEE**
**Tre Hargett, Secretary of State**
Division of Business Services
William R. Snodgrass Tower
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

## AFFIDAVIT AND ENDORSEMENT

03/04/2016

Case #: **191082-2**

SOS Summons #: 02560680

Certified #: **70150640000396064092**

RE: **DEBBORAH JEAN CHAPMAN**

VS: **LINCOLN FINANCIAL ADVISORS CORPORATION DBA LINCOLN FINANCIAL GROUP AND CLAY ALLEN CAPPS**

I, <u>DARLENE LAWRENCE</u>, having been duly authorized by Tre Hargett, Secretary of State of Tennessee, do hereby make oath on his behalf and under authorization as follows:

That on <u>02/22/2016</u>, I received from the plaintiff the original and certified copies of the process, notice or demand issued against <u>CAPPS, CLAY ALLEN</u> whose address is: <u>2713 GREATER DRUID HILLS BLVD, HENDERSONVILLE, NC 28791</u>, and that on <u>02/25/2016</u>, I mailed by registered or certified return-receipt mail the certified copies of the process, notice, or demand to the above address together with a written notice that service was made.

I further make oath that the return receipt for the registered or certified letter was received at my office in Nashville, Tennessee, on <u>03/04/2016</u>, and returned to <u>KNOX COUNTY - CHANCERY COURT of KNOXVILLE, TN</u> on <u>03/04/2016</u>.

*Tre Hargett*

Tre Hargett
Secretary of State

By: *Darlene Lawrence-PSA*

Sworn to and subscribed before me this

<u>4</u> day of <u>March</u>, 20<u>16</u>

_____

Notary Public

My Commission Expires: <u>1-9-2018</u>





# STATE OF TENNESSEE
## Tre Hargett, Secretary of State
Division of Business Services
William R. Snodgrass Tower
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

## Receipt Detail

HODGES, DOUGHTY & CARSON, PLLC
PO BOX 869
KNOXVILLE, TN  37901

Receipt ID:      002478312
Receipt Date:    02/24/2016
Receipt Total:   $20.00

| Item | Description | Check/Ref # | DLN # | Price | # | Amount |
|------|-------------|-------------|-------|-------|---|--------|
| Summons | Summons | 02560680 | | $20.00 | 1 | $20.00 |
| Payment-Check/MO | HODGES, DOUGHTY & CARSON, PLLC, KNOXVILLE, TN | 24645 | B0205-0702 | $20.00 | 1 | ($20.00) |

FILED

# IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

DEBBORAH JEAN CHAPMAN

    Plaintiff,

vs.

LINCOLN FINANCIAL ADVISORS
CORPORATION d/b/a LINCOLN
FINANCIAL GROUP and
CLAY ALLEN CAPPS,

    Defendant.

2016 FEB 18 AM 11: 36

HOWARD G. HOGAN

No. 191082- Y

ADA
FOR ASSISTANCE CALL
865 / 215-2952
TTY: 865 / 215-2497

RECEIVED
STATE OF TENNESSEE
2016 FEB 22 AM 8: 27
TRE HARGE T
SECRETARY OF

## SUMMONS

To the above-named Defendant(s): **CLAY ALLEN CAPPS**

    You are hereby summoned and required to serve upon **Thomas H. Dickenson**, attorney for Plaintiff, whose address is **617 W. Main Street, Post Office Box 869, Knoxville, Tennessee 37901-0869**, a true copy of the defense to the Complaint herewith served upon you within 30 days after service of this Summons and Complaint upon you, exclusive of the day of service. You will file the original pleading with the Court. If you fail to do so, judgment by default can be taken against you for the relief demanded in the Complaint.

    Issued and tested this _18th_ day of February, 2016.

                                     Clerk

                                     Deputy Clerk

## NOTICE

To the Defendant(s):

    Tennessee law provides a **ten thousand dollar ($10,000.00)** personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## SERVICE INFORMATION

To the Process Server:  **DEFENDANT, CLAY ALLEN CAPPS,** can be served through the Tennessee Secretary of State at **2713 Greater Druid Hills Boulevard, Hendersonville, North Carolina 28791.**

## RETURN

I received this Summons on the _____ day of _____, 2016.

I hereby certify and return that on the _____ day of _____, 2016:

[  ]  I served this Summons and a Complaint on Defendant _____
       in the following manner:_____
       _____

[  ]  I failed to serve this Summons within 30 days after its issuance because:_____
       _____

_____
Process server

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
[your] name and address on the reverse
[so that we can return] the card to you.
[Attach this card to the back of the mailpiece]

CAPPS, CLAY ALLEN
2713 GREATER DRUID HILLS BLVD
HENDERSONVILLE, NC 28791

2 25

9590 9401 0070 5071 5715 01

2. Article Number *(Transfer from service label)*
7015 0640 0003 9606 4092

PS Form 3811, April 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Clay Cps*
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. [Is delivery] address different from item 1?   ☐ Yes
   [If YES,] enter delivery address below:   ☐ No

3. [Service] Type
☐ [Adult] Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

191082-2

☑ 0003/0006

*FILED*

To Whom It Concerns,
        SOS Summons # 02560680

        I'm writing in response to
a Summons No. 191082. I was
told by the Chancery Court that a
"hand-written" reply would be alright.

        On Dec. 21st 2015, my sister
(Deborah Chapman) contacted me by phone
to tell me I had to return to
Knoxville immediatly, to sign
a form that would allow her
Annuity Monthly Check to be paid.
She said the Annuity's Co. made
a mistake and stopped her check.
I agreed but I had auto troubles
and could not return until it
was fixed.
        On 12-24-2015 I recieved
the Death Claim Forms from
        Lincoln Financial.
I called them (Lincoln) and after
giving them the needed information
I asked if this type of mistake
were a common acurence or was
it rare. She said there was
"No mistake", that the account had

set up for me to recieve the
death benefits at Bill's death.
    I told her what Debbie had
told me. She said that if I
signed that form that Debbie
had, I could "Never" get it
back. She also said if I signed
that form, it would not go to
Debbie, but to Bill's Estate and
might be months or possibly years
before Debbie might get benefits.
    I completed the Death Claim
form & got my bank to fax
it to Lincoln.
    I called Lincoln back
after X-Mas & asked when I
might recieve the benefits. Lincoln
told me a "Hold" had been put
on the funds because my sister
had made a claime also and
I would need to work out something
with her and I would have 30 days
to come to a decision.
    I sent Debbie a Text Message
suggesting we "Split" the money.

She replied that I was "DEAD" to her. We haven't spoke since.

I feel that the money should be divided (50-50). Debbie & Bill did not share their money. Debbie had her own money and Bill had his. I suspect that Debbie fears the future "alone" and thinks this money would give her comfort. Alot! of comfort.

I've been unemployed since April of 2015. I do not get Unemployment. I try to make my house payment each month from odd jobs and the help from friends allowing me to do errands for small fees. I cannot afford an Attorney now or in the near future.

I will be content with what the court decides, but I hope this is looked at fairly.

I have done nothing wrong and pray for a quick resolve.

Please forgive my hand writing.
I've been ill for past few
weeks.

Thank You,

Sincerely

Clay H Capps

otary: Jessica Deig Swan

expiration: July 6, 2019

☑0001/0006

# FILED

## IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

DEBBORAH JEAN CHAPMAN

Plaintiff,

vs.

LINCOLN FINANCIAL ADVISORS
CORPORATION d/b/a LINCOLN
FINANCIAL GROUP and
CLAY ALLEN CAPPS,

Defendant.

2016 FEB 18 AM 11:36

HOWARD G. HOGAN

No. 191082-Y

)
)
)
)
)
)
)
)
)
)
)


ADA
FOR ASSISTANCE CALL
865 / 215-2952
TTY: 865 / 215-2497

---

### SUMMONS

---

To the above-named Defendant(s): **CLAY ALLEN CAPPS**

    You are hereby summoned and required to serve upon **Thomas H. Dickenson**, attorney for Plaintiff, whose address is **617 W. Main Street, Post Office Box 869, Knoxville, Tennessee 37901-0869**, a true copy of the defense to the Complaint herewith served upon you within 30 days after service of this Summons and Complaint upon you, exclusive of the day of service. You will file the original pleading with the Court. If you fail to do so, judgment by default can be taken against you for the relief demanded in the Complaint.

    Issued and tested this ____18th____ day of February, 2016.

ATTEST:
Certified a True Copy

_Hawe G. Hogan_
Clerk and Master Chancery Court

By_____
Deputy Clerk
To the Defendant(s):

_Hawe G. Hogan_
Clerk

_____
Deputy Clerk

**NOTICE**

    Tennessee law provides a **ten thousand dollar ($10,000.00)** personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Self-Help Credit } Samantha
PL # 233-1140

Chancery Court
1-865-215-2555

Fax # 865 215 2920

Chancery Court
400 Main
Suite 125
Knoxville, TN 37902

Library
697-4725
10¢ a copy